## Commonwealth of Pennsylvania *v.* Baker, Appellant.

*Criminal law—Sodomy—Charge—Reasonable doubt—Sufficiency—Accepted definition—Trial—Prejudicial questions—Withdrawal of juror—New trial.*

A charge that a reasonable doubt is one for which the juror can give some proper reason for entertaining and that if the juror can give no reason for entertaining the doubt then the doubt does not exist is erroneous.

A reasonable doubt may exist in the mind of a juror without his being able to formulate a reason. An accepted definition of reasonable doubt is that it must be an honest doubt—such a difficulty as fairly strikes a conscientious mind and clouds the judgment. If the mind be fairly satisfied of a fact, on the evidence—as much so as would induce a man of reasonable firmness and judgment to take the fact as true, and to act upon it in a matter of importance to himself, it would be sufficient to rest a verdict upon it.

Where such accepted definition has been given, a court may not be required, generally speaking, to amplify that definition, and points of charge requesting abstract amplification of the subject are properly refused.

Where the district attorney asked defendant irrelevant questions which were clearly inadmissible and which were calculated to prejudice the minds of the jury against the defendant, refusal to withdraw a juror was error and a verdict of guilty will be reversed.

Argued March 15, 1928. Appeal No. 32, October T., 1928, by defendant from judgment and sentence of O. and T., Northampton County, June T., 1927, No. 3, in the case of the Commonwealth of Pennsylvania v. Abe Baker. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Indictment for sodomy. Before McKEEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were the charge of the court and refusal of motion to withdraw a juror and for a new trial.

*William A. Gray,* and with him *Francis E. Walter,* for appellant.

*Robert E. James,* District Attorney, for appellee.

OPINION BY LINN, J., April 16, 1928:

Appellant, convicted of violating section 32 of the Crimes Act of 1860, P. L. 392 and the Act of June 11, 1879, P. L. 148, presents two contentions that we sustain; the others are overruled.

(1) The charge on reasonable doubt was wrong. After stating to the jurors that the Commonwealth must convince them of the defendant's guilt beyond a reasonable doubt, the judge added: " 'Beyond a reasonable doubt' does not mean beyond all doubt, because possibly there is nothing in human affairs that can be established beyond all doubt. A reasonable doubt is an honest, substantial doubt that arises from the evidence in the case, which enters into a juror's mind and causes that juror to hesitate to say whether

he has a moral and abiding conviction of guilt." So far, the instruction was unobjectionable, but the court continued: "It must be the kind of doubt that an intelligent man or woman can give some reason for entertaining. If you can give some proper reason for entertaining the doubt which causes you to hesitate, then the doubt exists; if you can give no reason for entertaining the doubt, then the doubt does not exist. It must not be an imaginary doubt which a juror creates in his own mind simply for the purpose of acquitting a defendant, but the kind of doubt that would cause a juror to hesitate as to what course he would pursue in determining some of the weightier affairs of life." The error in that instruction came in with the attempted amplification or refinement of what had already been sufficiently stated to the jury.

An accepted definition of reasonable doubt is given in Commonwealth v. Drum, 58 Pa. 9, 22: "It must be an honest doubt—such a difficulty as fairly strikes a conscientious mind and clouds the judgment. If the mind be fairly satisfied of a fact, on the evidence —as much so as would induce a man of reasonable firmness and judgment to take the fact as true, and to act upon it in a matter of importance to himself, it would be sufficient to rest a verdict upon it."

The error in the instruction complained of is in requiring the doubt to be one "that an intelligent man or woman can give some reason for entertaining"; one for which the juror "can give some proper reason for entertaining"; in charging that if the juror "can give no reason for entertaining the doubt, then the doubt does not exist." The state of mind described by the phrase "reasonable doubt" is one of indecision or hesitation to reach the conclusion of guilt, and necessarily implies that the juror may be unable to give "some proper reason for entertaining" it; reasonable doubt may exist without his being able to formulate any reason for it. It is sufficient if the

conscientious mind of reasonable firmness and judgment is unable from the evidence to find the facts involving guilt: Com. v. Bryson, 276 Pa. 566; Com. v. Cyaus, 88 Pa. Superior Ct. 227. We may add that if an accepted definition of reasonable doubt (Com. v. Drum, supra) has been given, a court may not be required, generally speaking, to amplify that definition, and if points of charge are presented requesting abstract amplifications of the subject, they may properly be refused on the ground that the accepted definition of reasonable doubt has already been given: Com. v. Lewis, 222 Pa. 302; Quinlan et al. v. Rundle, 273 Pa. 479, 485.

(2)  The defense was an alibi.  The offense was committed in the Riverside Hotel in Northampton where appellant was employed selling sandwiches, cigars, soda-water, etc.  To support his alibi he testified (and called witnesses who corroborated him) that he was at 529 East Third Street in Bethlehem when the crime was committed in Northampton.  On cross-examination the district attorney asked the following question:  "Don't you know that 529 East Third Street is a club for pimps and people connected with whorehouses in South Bethlehem on June 8th?"  It was objected to, but the court overruled the objection. A motion was also made immediately to withdraw a juror and the motion was refused.  Appellant answered in substance that he knew nothing about that. He was also asked on cross-examination:  "Are there any girls that stayed, while you were employed there over night at the Riverside Hotel?"  An objection to that question was overruled, and appellant replied that he did not know.  Permitting those questions to be asked, refusing to grant the motion to withdraw a juror and the subsequent refusal of the motion for a new trial are assigned for error.  We note that in addition during cross-examination he was asked questions (to which the court sustained objections) such

as "what is the reputation of the Riverside Hotel?"
"Did you ever see any girls in the Riverside Hotel?"
"Isn't it a bawdy house?"  It does not appear what
relevance, if any, the inquiries had to the prosecution,
nor that the facts suggested as the basis of the ques-
tions, if true, were relevant.  There is nothing in the
record to indicate that the district attorney was pre-
pared to prove the facts he suggested in his questions.

Appellant's argument is that asking the questions
in the circumstances described was such transgression
of the rules governing orderly procedure as to justify
the interference of the court and the granting of the
motion to withdraw a juror, or the later motion for a
new trial.  This view is amply supported by precedent.
Wigmore on Evidence (1st Edition, Volume III) sec-
tion 1808, page 2344, states the rule against the practice
complained of and quotes two supporting decisions
strongly condemning it:  Gale v. People, 26 Mich.
157, 161, and People v. Wells, 100 Cal. 459, 462.  In
People v. Wells, the court said: "Its only purpose
therefore, was to get before the jury a statement, in
the guise of a question, that would prejudice them
against appellant.  If counsel had no reason to believe
the truth of the matter insinuated by the question,
then the artifice was most flagrant; but if he had any
reason to believe in its truth, still he knew that it was
a matter which the jury had no right to consider.

"The prosecuting attorney may well be assumed to
be a man of fair standing before the jury; and they
may well have thought that he would not have asked
the question unless he could have proved what it in-
timated if he had been allowed to do so ......  This
was an entirely unfair way to try the case; and the
mischief was not averted because the court properly
sustained the objection—though we think it should
have warned counsel against the course which he was
taking—and instructed the jury specially on the sub-
ject.  The wrong and the harm was in the asking of

the question. Of course, in trials of criminal cases questions as to the admissibility of evidence will frequently arise about which lawyers and judges may fairly differ in opinion; and in such cases defendants must be satisfied when courts sustain their objections. But where the prosecuting attorney asks a defendant questions which he knows, and every judge and lawyer knows, to be wholly inadmissible and wrong, and where the questions are asked without the expectation of answers; and where the clear purpose is to prejudice the jury against the defendant in a vital matter by the mere asking of the questions, then a judgment against the defendant will be reversed, although objections to the questions were sustained, unless it appears that the question could not have influenced the verdict.''

In this state, prejudicial misconduct similar in general character and effect, has been repeatedly condemned: see Com. v. Swartz, 37 Pa. Superior Ct. 507; and cases discussed in that opinion; Com. v. Polichinus, 229 Pa. 311, 314; Com. v. Shoemaker, 240 Pa. 255, 259; Com. v. Ronello, 251 Pa. 329, 338.

The judgment is reversed and a new trial is awarded.